SECRETARY OF ADMINISTRATION & FINANCE *vs.* LABOR
RELATIONS COMMISSION (and a companion case).

Suffolk. May 8, 2001. - June 15, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Damages,* Back pay, Interest. *Interest. Administrative Law,* Agency's authority. *Labor,* Unfair labor practice. *Commonwealth,* Claim against, Collective bargaining.

A decision of the Labor Relations Commission ordering the Secretary of Administration and Finance to pay interest on back pay damages at an annual rate of twelve per cent, pursuant to G. L. c. 231, § 6B, rather than the "floating" rate, pursuant to G. L. c. 231, § 6I, constituted an error of law, both as a matter of statutory interpretation and as a matter of public policy. [342-347]

The Labor Relations Commission properly within its discretion ordered "quarterly compounding" of the interest awarded on back pay damages, pursuant to G. L. c. 150E, § 11. [347-348]

APPEAL from a decision of the Labor Relations Commission.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert L. Quinan, Jr.,* Assistant Attorney General, for the plaintiff.

*John B. Cochran* for the defendant.

*James F. Lamond* for Massachusetts Nurses Association.

The following submitted briefs for amici curiae:

*Alan J. McDonald & James F. Lamond* for Massachusetts Nurses Association.

*John M. Marra* for Division of Human Resources.

*David B. Rome & Katherine D. Shea* for Local 285 & Local 509, Service Employees International Union, AFL-CIO.

IRELAND, J. The Secretary of Administration and Finance (Secretary) appeals from two decisions of the Labor Relations Commission (commission) (1) ordering the Secretary to pay

interest on back pay damages at an annual rate of twelve per cent, pursuant to G. L. c. 231, § 6B,[1] rather than the "floating" rate, pursuant to G. L. c. 231, § 6I[2]; and (2) specifying that the interest on the awarded amount shall be compounded quarterly. Because imposition of the twelve per cent rate contravenes the existing statutory scheme, the commission's interest computation constitutes an abuse of discretion. We hold that interest on the underlying judgment is subject to the floating rate. On remand for recalculation, the award may, however, be compounded.

1. *Background.* This appeal arises out of two commission decisions involving the same two parties: the Commonwealth and the Massachusetts Nurses Association (Association). In each case, the commission issued remedial orders against the Commonwealth. Neither the ruling nor the underlying remedy, an award of back pay to a group of nurses formerly employed by the Department of Social Services (department), is contested. The sole matter before us is the computation of interest due on the money damages component of that remedy.[3]

As the Secretary concedes, the underlying facts before the commission are not relevant to our review. For the purposes of providing context, we briefly note the following. The two cases involved the unlawful termination of union nurses. In one case, the commission concluded that the department unlawfully retali-

---

[1]General Laws c. 231, § 6B, provides: "In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon at the rate of *twelve per cent per annum* from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law" (emphasis supplied).

[2]General Laws c. 231, § 6I, provides, in relevant part: "Interest required to be paid by the commonwealth pursuant to this section shall be calculated at a rate equal to the coupon issue yield equivalent, as determined by the United States secretary of the treasury, of the average accepted auction price for the last auction of fifty-two-week United States treasury bills settled immediately prior to the date of judgment; provided, however, that such interest shall not exceed the rate of ten per cent per annum."

[3]As conceded in his brief and at oral argument, the Secretary does not "presently press [the] issue" of sovereign immunity. Thus, we do not consider the matter on appeal: if it exists, sovereign immunity has been waived with respect to the award of interest in these cases.

ated against the nurses for exercising their statutorily protected collective bargaining rights, pursuant to G. L. c. 150E, § 2, when it transferred bargaining unit work to nonbargaining unit personnel without first giving the Association notice and an opportunity to bargain. To remedy these wrongs the commission ordered the Commonwealth to (1) cease and desist from these activities; and (2) take affirmative action by (a) reinstating the laid-off nurses; (b) restoring all nurse duties to the Association's bargaining unit; and (c) "[make] whole the nurses who were laid off . . . for any losses that they have suffered as a result of the Commonwealth's unlawful actions, *plus all interest on all sums due calculated in the manner specified in* Everett School Committee, *10 MLC 1609 (1984)*" (emphasis supplied). The commission's order in the *Everett Sch. Comm.* case called for interest to be paid at a rate of twelve per cent pursuant to G. L. c. 231, § 6B.

In the second case, the commission issued a similar remedial order, including a cease and desist directive. The order further required that the petitioning nurses be hired into newly created positions, and that the department "[make the two nurses] whole for any loss of wages and benefits suffered as a result of the Commonwealth's unlawful refusal to hire them, *plus interest on any sums owed at the rate specified in M.G.L. c. 231, Section 6B, compounded quarterly*" (emphasis supplied).[4] The Secretary appealed, on the ground that the commission's orders regarding the rate and compounding of interest constituted an abuse of discretion. We transferred the consolidated cases to this court on our own motion.

2. *Rate of interest.* Pursuant to G. L. c. 30A, § 14 (7), the commission's rulings may be set aside or modified if they are issued "[i]n excess of the statutory authority or jurisdiction of

---

[4]There is some disagreement as to whether, and to what extent, the Commonwealth raised any interest-related arguments pertaining to the second case. Absent prejudice to either party, "[w]here injustice might otherwise result, an appellate court properly may consider questions of law which were neither argued nor passed upon in a court or agency below." *McLeod's Case*, 389 Mass. 431, 434 (1983). The identical parties briefed this particular issue in the companion case. Perceiving no prejudice to either side and mindful of the consistency necessary to fashion an appropriate "make whole" remedy, we extend our holding to both actions.

the agency"; "[b]ased upon an error of law"; or "[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." See *Therrien* v. *Labor Relations Comm'n,* 390 Mass. 644, 648 (1983). Our review focuses on whether the floating interest rate set forth in G. L. c. 231, § 6I, supplanted the twelve per cent rate set forth in G. L. c. 231, § 6B, which, according to the commission, had been incorporated regularly into its remedial orders issued since the commission first adopted it in 1984. See *Everett Sch. Comm., supra.*

In order to remedy a prohibited labor practice, G. L. c. 150E, § 11, authorizes the commission to issue "an order requiring [the charged party] to cease and desist from such prohibited practice, and [to] take such further affirmative action as will comply with the provisions of this section." With this statutory enactment, the Legislature bestowed "considerable remedial discretion" on the commission. See *Therrien* v. *Labor Relations Comm'n, supra.* See also *Leahy* v. *Local 1526, Am. Fed'n of State, County, & Mun. Employees,* 399 Mass. 341, 354 (1987) (awarding interest to make plaintiff whole for damages caused by union's breach).

In *School Comm. of Newton* v. *Labor Relations Comm'n,* 388 Mass. 557, 579 (1983), this court reviewed the allowance of interest on back pay awarded to the victims of unfair labor practices. There, the commission ordered the school committee to pay "interest at the rate of seven percent (7%) per annum, compounded quarterly." *Id.* Weighing related provisions from the Federal statutory scheme, and mindful that G. L. c. 150E, § 11, is broad and delegates "considerable discretion to the commission in fashioning an appropriate remedy," *id.* at 580, we held "[t]he decision to award interest was within the commission's authority . . . and is consistent with Federal practice." *Id.* at 579.

On the heels of that opinion, the commission decided *Everett Sch. Comm.,* 10 M.L.C. 1609 (1984). After noting its "discretion to fix any interest rate necessary to remedy the violations of [G. L. c. 150E, § 10]," the commission concluded that "the public interest is best served by application of the same interest rate which the General Court has judged appropriate for tort claims. Accordingly, [the commission] adopt[ed] the interest

rate specified in [G. L. c. 231, § 6B,] as the rate of interest [i.e., twelve per cent per annum] applicable to monetary remedies awarded by the [c]ommission." *Id.* at 1613. Since then, the commission has repeatedly fixed interest awards at the twelve per cent rate as set forth in G. L. c. 231, § 6B. See *City of Lawrence*, 26 M.L.C. 29, 30 (1999); *Town of Falmouth*, 25 M.L.C. 24, 26 (1998).

Prior to 1993, judgments against the Commonwealth accrued prejudgment interest at the rate of twelve per cent per annum. See *Sutton Corp.* v. *Metropolitan Dist. Comm'n*, 423 Mass. 200, 213 (1996). In 1993, the Legislature altered the statutory framework governing the imposition of interest on judgments against the Commonwealth. Specifically, G. L. c. 231, § 6C (governing contracts actions), was amended by St. 1993, c. 110, § 224,[5] and § 6I was inserted by St. 1993, c. 110 § 225. "Passed as outside sections of an appropriations bill such interest is now calculated by reference to the coupon issue yield equivalent of the price for United States treasury bills, capped at ten per cent." *Sutton Corp.* v. *Metropolitan Dist. Comm'n*, *supra* (upholding award of twelve per cent interest ordered before 1993 amendment became effective).[6]

Notwithstanding the deference due to the commission and its longstanding practice, we find that application of the twelve per cent interest rate set forth in G. L. c. 231, § 6B, constituted an

---

[5]General Laws c. 231, § 6C, with the words added by the 1993 amendment in italics, reads: "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action, *provided, however, that in all actions based on contractual obligations, upon a verdict, finding or order for judgment against the commonwealth for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at a rate calculated pursuant to the provisions of section six I from the date of the breach or demand. If the date of the breach or demand is not established, such interest shall be added by the clerk of the court from the date of the commencement of the action.*"

[6]The relevant legislative history sheds little, if any, light on either the legislative intent behind, or interplay between, these amendments.

error of law in light of the enactment of § 6I. While the commission retains discretion to fashion appropriate remedies, extending the statute's twelve per cent interest rate to judgments against the Commonwealth is incorrect both as a matter of statutory interpretation and as a matter of public policy. First, § 6B speaks to tort actions in general, but makes no explicit reference to suits involving the Commonwealth.[7] Contrast G. L. c. 231, §§ 6C, 6I. See Note, Postjudgment Interest in Contract Actions, 4 Suffolk U. J. Trial & Appellate Advoc. 95, 109 (1999). Next, G. L. c. 231, § 6B, governs interest added to damages in tort actions, yet the Massachusetts Tort Claims Act, G. L. c. 258, § 2, explicitly prohibits the imposition of prejudgment interest in tort suits brought against the Commonwealth. See *Onofrio* v. *Department of Mental Health,* 411 Mass. 657, 658-659 (1992); *Dinsdale* v. *Commonwealth,* 39 Mass. App. Ct. 926, 927 (1995). Moreover, the "injuries" sustained by the nurses are quite different from the "personal injuries[,] . . . consequential damages, or [property] damage" enumerated in G. L. c. 231, § 6B. See 1 G. Mottla, Proof of Cases in Massachusetts § 14.37 (3d ed. 1992) (mapping scope of statute).

In contrast, the language of G. L. c. 231, § 6I, lends itself more readily to the award under review. As the language of the statute makes clear, the floating rate is addressed to interest the Commonwealth is required to pay. See G. L. c. 231, § 6I ("Interest required to be paid by the commonwealth . . ."). The statute does not limit the circumstances of such interest.[8] The delineated formula mirrors a nearly identical provision of

---

[7]Likewise, § 6C did not expressly provide for interest to be assessed against the Commonwealth in contract actions until the statute was amended in 1993. See note 5, *supra.*

[8]The only published decision addressing G. L. c. 231, § 6I, noted, "in 1993, the way that interest is calculated in judgments against the Commonwealth in *contract* actions was changed [i.e., from the twelve per cent per annum rate to the floating rate]" (emphasis supplied). *Sutton Corp.* v. *Metropolitan Dist. Comm'n,* 423 Mass. 200, 213 (1996). See 1 G. Mottla, Proof of Cases in Massachusetts § 14:11.1 (Supp. 2000). Contrary to the Association's assertion in its amicus brief, we do not read G. L. c. 231, § 6I, as pertaining exclusively to contract actions. If the Legislature intended that result, it presumably would have added the floating rate provision to § 6C and would not have needed to craft an entirely new section. See Donovan, Judgment in Superior Court Civil Practice Manual § 15.10, at 15-12 (Mass. Continuing Legal Educ. 1997) (Section 6I applies to "interest assessed on *judgments*

the eminent domain statute, G. L. c. 79, § 37,[9] that was also added by the Legislature in 1993. See St. 1993, c. 110, § 137. That the Legislature imposed the floating interest rate against the Commonwealth in two unrelated statutes, at roughly the same time, reveals its intention to establish a uniform interest rate on all payments the Commonwealth must make, regardless of type. Moreover, the continued efficacy of the floating interest rate is bolstered by its direct incorporation into subsequently enacted legislation such as G. L. c. 55A, § 16 (*c*), inserted by St. 1998, c. 395, § 2 (requiring return of clean election funds "with interest . . . at the rate computed as specified in section 6I of chapter 231").

As formulated by the Legislature, the floating interest rate is tailored to fulfil the public policy goals underlying interest awards. "Interest is awarded by law so that a person wrongfully deprived of the use of money should be made whole for his loss." *Perkins Sch. for the Blind* v. *Rate Setting Comm'n*, 383 Mass. 825, 835 (1981). See *Milwaukee* v. *Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196-197 (1995). "The damaged party is entitled to a return on the money that the party would have had but for the other party's wrongdoing. [However, t]o give the damaged party more than that would go beyond the purpose of the statute. The purpose behind the prejudgment interest statute is not to penalize the wrongdoer . . . ." *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 717 (1990). See *Mirageas* v. *Massachusetts Bay Transp. Auth.*, 391 Mass. 815, 820-821 (1984). Given fluctuating economic conditions, adherence to what may be, and in this decade has been, a significantly above-market interest rate, i.e., a flat twelve per cent rate, would result in a windfall for the nurses in this case. See *Brayman* v. *99 West, Inc.*, 116 F. Supp. 2d 225, 236 (D. Mass. 2000). Calculating the interest award pursuant to the

against the Commonwealth" but not differentiating among nature of such judgments [emphasis supplied]).

[9]General Laws c. 79, § 37, states in relevant part: "Interest required to be paid under this chapter shall be at an annual rate equal to the coupon issue yield equivalent, as determined by the United States Secretary of the Treasury, of the average accepted auction price for the last auction of 52-week United States Treasury bills settled immediately before the date of taking; provided, however, that such interest shall not exceed the rate of ten percent per annum."

floating rate, however, yields a figure more akin to the nurses' actual losses. See *Boston Children's Heart Found., Inc.* v. *Nadal-Ginard*, 73 F.3d 429, 442 (1st Cir. 1996) (where application of statutory rate would result in windfall, imposing interest rate tied to United States Treasury bill rates did not prejudice either party).

Although the Legislature's decision to maintain the twelve per cent rate in certain contexts (e.g., tort judgments against private parties) despite fluctuating conditions[10] is undoubtedly its prerogative, the commission's adherence to the twelve per cent interest rate in this case would make the nurses "more than whole," run contrary to the policy underlying interest awards, come at the expense of the taxpayers and, most importantly, in light of the post-1993 statutory scheme, constitute an error of law. G. L. c. 30A, § 14 (7). See *Boston* v. *Massachusetts Comm'n Against Discrimination*, 39 Mass. App. Ct. 234, 245-246 (1995). We thus conclude that the commission abused its discretion by adhering to the twelve per cent per annum rate in this case.

3. *Compounding interest.* The commission acted within its discretion, however, in ordering "quarterly compounding" of the awarded interest. Although this court has expressed an "ancient unwillingness to allow compound interest," *Lewin* v. *Folsom*, 171 Mass. 188, 192 (1898), we recognize that compound interest awards may be an appropriate component to remedial orders pursuant to G. L. c. 150E, § 11, in certain cases. See *School Comm. of Newton* v. *Labor Relations Comm'n*, *supra* at 579 (seven per cent per annum compounded quarterly). See generally *Sarrouf* v. *New England Patriots Football Club, Inc.*, 397 Mass. 542, 551 (1986), and cases cited. Compound interest has been integrated into commission awards for nearly twenty-five years. See *Town of Townsend*, 1 M.L.C. 1450, 1459 (1975); *Commonwealth of Mass.*, 8 M.L.C. 1287, 1291 (1981). Where the Legislature has not spoken to the contrary, we respect the commission's "considerable discretion . . . in fashioning an

---

[10]In 1974, the Legislature fixed interest at eight per cent per annum. St. 1974, c. 224, § 1. The rate was increased to ten per cent in 1980, St. 1980, c. 322, § 2, and the present twelve per cent per rate in 1982. St. 1982, c. 183, § 2.

appropriate remedy." *School Comm. of Newton* v. *Labor Relations Comm'n, supra* at 580.

4. *Conclusion.* For the reasons set forth above, the commission's order is vacated and remanded for recalculation of interest. On remand, however, the awarded interest may be compounded.

*So ordered.*